UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 13-20183-CR-GRAHAM/GOODMAN

UNITED STATES OF AMERICA

v.

FABIAN PERPALL,

        Defendant.
_____/

## REPORT AND RECOMMENDATIONS

This Cause is before the Undersigned following an evidentiary hearing on Defendant Fabian Perpall's ("Perpall") Motion to Suppress [ECF No. 20], which was referred to the Undersigned for a Report and Recommendations by District Court Judge Donald L. Graham (the "District Court"). [ECF No. 24]. The Undersigned has reviewed the Motion, the Government's Response [ECF No. 26], and other relevant portions of the record. Following the hearing, and for the reasons given below, the Undersigned **RESPECTFULLY RECOMMENDS** that the District Court **DENY** Perpall's motion.

    **I.**    **Factual Background**

Perpall is charged by indictment, filed on March 22, 2013, with one count of possession of ammunition by a convicted felon and one count of possession of a firearm and ammunition by a convicted felon, both in violation of Title 18, United States Code, Section 922(g)(1). [ECF No. 1]. On July 8, 2012, as Perpall was driving through a Miami neighborhood, he allegedly fired several shots at his brother and his brother's associate.

1

He then crashed into a bystander's parked car, backed up, and drove away, still shooting.

That bystander, who was in a nearby yard, recognized Perpall and identified him from a six-person photographic lineup as the shooter when the police responded shortly after the shooting. The police recovered several 9mm casings from the street. Later that night, the investigating detective got an anonymous tip that Perpall had been shooting at his brother and that they were fighting over their recently deceased father's property.

On July 11, 2012, a number of members of the Miami-Dade Police Department went to the Tuscany Place Apartments, 25250 Southwest 137th Avenue, where their information indicated Perpall was staying. The lead detective received information from a source that Perpall was staying with a close friend, Curtis Bennett, and Bennett's girlfriend, Christina Ferguson. The detective, Daryl Rodriguez, also received information that Ferguson was living in the apartment with two men and several children. Detective Rodriguez went to the manager's office and confirmed that Ferguson was the leaseholder of an apartment in the complex.

The officers saw Perpall and Bennett leaving Ferguson's apartment. They arrested Perpall for the shooting and Bennett on several open bench warrants. Bennett was later killed in a gang-related shooting in the fall of 2012.

As the arrests were being made, Ferguson, Bennett's girlfriend, came out of the apartment. She confirmed to the police that she was the leaseholder, and she provided written consent to search the residence. According to Ferguson, Perpall had been living at the apartment for about two weeks.

That search revealed a 9mm SCCY, Model CPX-1 handgun, loaded, with four 9mm rounds in the magazine. This handgun was next to the living room couch. Police also found two shotguns in the master bedroom's closet, hidden underneath clothing on a top shelf. One of the shotguns was a 12 Gauge High Standard semi-automatic, Model 10, Series B, loaded, with one round in the chamber and four in the magazine. The other was a Mossberg 20 Gauge, found unloaded. Perpall's palm print was recovered from the Mossberg shotgun.

## II. Legal Standards

"One of the well-established exceptions to the probable cause and warrant requirements is a search which is conducted pursuant to voluntary consent." *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989). "[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*,

415 U.S. 164, 171 (1974). The government must establish that the third party who provided consent had the requisite "common authority," or, if the third party did not actually have this authority, that the police reasonably believed she did. *See Illinois v. Rodriguez*, 497 U.S. 177, 181, 188-89 (1990); *see also United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008).

### III. Analysis

In *Matlock*, the Supreme Court approved a search where the defendant was arrested in the yard and placed in a police car outside the residence. The police never asked him for consent, but obtained consent to search from the defendant's girlfriend, with whom he shared a bedroom in the house. 415 U.S. at 167-68; *see also United States v. Backus*, 349 F.3d 1298, 1305 (11th Cir. 2003).

As was made clear at the evidentiary hearing, these facts are abundantly similar to the facts of the present case. At the hearing, Detective Daryl Rodriguez ("Rodriguez") testified that Perpall was apprehended in a common area outside of Ferguson's apartment. Following Perpall's arrest, Rodriguez went to Ferguson's apartment and asked if the Miami-Dade police could search her apartment. Ferguson verbally consented to the search. Following the verbal consent, Rodriguez testified that Ferguson signed a written consent form that was provided to her.

Sergeant Jason Breijo ("Breijo") also testified at the hearing that Ferguson

4

willingly signed the consent form. Breijo underscored that Ferguson was at no time in custody, and was under no distress when she signed the consent form. Neither Breijo nor Rodriguez heard any officer advise Ferguson that she would not be able to get back into her apartment if they had to leave to obtain a search warrant or that her children would be removed if the officers were required to obtain a search warrant. In addition, no officer had a weapon drawn when Ferguson was asked for consent to search her apartment. Ferguson did not hesitate before providing consent. She was not in custody, had not been threatened and did not appear to be in any distress whatsoever.

Although Perpall did not testify at the hearing and did not call Ferguson as a witness either, his argument is that the police officers purposefully did not ask him for consent to search the apartment he had been staying in for approximately two weeks. He also suggests that the officers intentionally removed him from the apartment area and hustled him into a squad car so that he did not have the opportunity to refuse to give consent to the search of Ferguson's apartment.

The Undersigned does not find that the officers had a devious, underhanded purpose in placing Perpall into a squad car after arresting him in connection with a shooting. More specifically, there is no evidence to establish that the officers' actual purpose in placing the handcuffed Perpall into a squad car was to deprive him of the ability to object to the search of an apartment leased by another person (and where he

5

had been staying for approximately two weeks). To the contrary, placing a handcuffed suspect into a squad car after arrest is a routine step in the standard arrest protocol.

To be sure, the police did not ask Perpall for consent to search Ferguson's apartment, but Perpall has not pointed to any binding authority which would **require** the police to first ask him for consent. Phrased differently, Defendant has not called the Undersigned's attention to any authority which would invalidate or vitiate the written voluntary consent given by the actual leaseholder merely because police did not ask a temporary, short-term guest if he, too, would consent to the search. The Undersigned has not found any such authority either, and does not find this argument to be persuasive.[1]

As the evidentiary hearing made clear, Ferguson was not in custody at the time she gave consent or at any time thereafter, and she was never threatened by any police officers regarding the intended search. After providing consent, she gave a voluntary statement to the police. Her consent was voluntary and justifies the warrantless search of her residence. Therefore, Perpall's motion to suppress should be denied. *United States*

---

[1] On the day he was arrested, Perpall told police that he did **not** live at Ferguson's apartment. If this denial were true, then he would lack standing to challenge the search of Ferguson's apartment. After being indicted, however, Perpall now claims that he *was* in fact living at the apartment. Although he has changed his story, the Undersigned finds that Perpall was staying at the apartment on the day of the search and therefore concludes that he has standing to challenge the search.


*v. Harris*, 526 F.3d 1334 (11th Cir. 2008) (validating search of taxi with driver's consent). *See also United States v. Ervin*, 2013 WL 1729582, at *4 (11th Cir. May 22, 2013) (upholding search, rejecting argument that the officers knew the defendant would not consent if asked and explaining that "although officers may not remove an objecting tenant for the purpose of avoiding a possible objection, officers are not required to ask a potential objector if he consents").

## IV. Conclusion

For the reasons given above, it is **RESPECTFULLY RECOMMENDED** that the District Court **DENY** Perpall's motion.

## V. Objections

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(a), the Parties have **two days** after being served with a copy of this Report and Recommendations to serve and file written objections, if any, with the District Court.[2] Failure to file timely objections shall bar the Parties from a *de novo* determination by the District Court of an issue covered in this Report and Recommendations and bar the Parties from attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark*

---

[2] Because trial of this case is imminent and because the parties already briefed the issues before the hearing, the Undersigned is shortening the parties' objections period and eliminating the response and reply periods.

*Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988)).

**RESPECTFULLY RECOMMENDED** in Miami, Florida this 12th day of June, 2013.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record